CADDEL, APPELLANT, *v.* BROWN ET AL., RESPONDENTS.

(No. 4,087.)

(Submitted January 17, 1920.   Decided February 16, 1920.)

[187 Pac. 897.]

*Malicious Prosecution—Evidence—Insufficiency—Directed Verdict Proper.*

1. Where the evidence in an action for malicious prosecution of plaintiff on a charge of cattle stealing showed that the county attorney had acted upon his own initiative, after a careful investigation and without consulting or advising with defendants, a directed verdict in favor of the latter was proper.

*Appeal from District Court, Big Horn County; A. C. Spencer, Judge.*

ACTION by John H. Caddel against A. G. Brown and C. M. Taintor. From a judgment for defendant and an order denying him a new trial, plaintiff appeals. Affirmed.

*Mr. E. E. Enterline, Mr. C. F. Gillette,* and *Mr. T. H. Burke,* for Appellant, submitted a brief; *Mr. Enterline* and *Mr. Gillette* argued the cause orally.

The court erred in sustaining the defendants' motion for directed verdict and entering judgment thereon. There was ample evidence to sustain the allegations of the complaint and to show that the criminal prosecution was instituted by the defendants maliciously and without probable cause. The jury had a right to draw an inference from the testimony introduced that the defendants procured Le Fors to make and filed the criminal complaint for the purpose of having the plaintiff in this action, the defendant in the criminal action, arrested. The admissions of Brown when he was interrogated by the witness Jordan clearly show that he made no denial of the fact that he had instituted the criminal prosecution, but, on the contrary, sought to excuse himself upon the ground that his codefendant, Taintor, had agreed to bear the expense of the prosecution. In

addition to that, Pageant, a witness for the defendants, testified that he was advised by the defendant, Brown, and this was before the criminal complaint was filed, that the steer was wanted as evidence in the case, and that he understood that they, of course meaning Brown and Taintor, "Were getting up a case against him [Caddel]." This evidence alone, not taking into consideration the other evidence in the case, was sufficient to submit the question to the jury as to whether or not the defendants had instigated the arrest of the plaintiff. (*Fisher* v. *Westmoreland*, 101 Miss. 180, Ann. Cas. 1914B, 636, 57 South. 563; *Robinson & Co.* v. *Greene*, 148 Ala. 434, 43 South. 797.)

The evidence further shows that the defendants employed attorneys Metz and Marshall, before the filing of the complaint, and that as such attorneys they advised the prosecution. This alone would be sufficient to render them liable. (*Eggett* v. *Allen*, 119 Wis. 625, 96 N. W. 803, 806; *Robinson & Co.* v. *Greene*, 148 Ala. 434, 43 South. 797.)

Were the facts such as would lead a man of ordinary care and prudence to believe or entertain an honest and strong suspicion that plaintiff was guilty of the crime charged against him? Plaintiff claimed he had at least a *prima facie* right to the steer, and made demand for it after it was taken from him and before the complaint was filed. This was a circumstance for consideration. (*Weaver* v. *Townsend*, 14 Wend. (N. Y.) 192; *Blunk* v. *Atchison, T. & S. F. Ry.*, 38 Fed. 311, 313.) There was no attempt of concealment of the animal on the part of the plaintiff. This, too, was a circumstance to be considered. (*Tabert* v. *Cooley*, 46 Minn. 366, 13 L. R. A. 463, 49 N. W. 124.) "Proof of plaintiff's good reputation for many years in the community went to show an improbability that the plaintiff would be guilty of the conduct embodied in the charge, and of this the defendant may be presumed to have been aware." (*McIntire* v. *Levering*, 148 Mass. 546, 12 Am. St. Rep. 594, 2 L. R. A. 517, 20 N. E. 191; *Israel* v. *Brooks*, 23 Ill. 575; *Blizzard* v. *Hays*, 46 Ind. 166, 15 Am. Rep. 291; *Woodworth* v. *Mills*, 61 Wis. 44, 50 Am. Rep.

135, 20 N. W. 728; *McIntosh* v. *Wales,* 21 Wyo. 397, Ann. Cas. 1916C, 273, 134 Pac. 274.)

There were disputed questions of fact involved upon the issue of want of probable cause, and that being the situation in the case, the cause should have been submitted to the jury. The question of probable cause, when there is no conflict in the evidence, no disputed facts, nor any doubt upon the evidence, the inference to be drawn from it, is one of law for the court and not of fact for the jury. (*Heyne* v. *Blair,* 62 N. Y. 19, 23; *Galley* v. *Brennan,* 216 N. Y. 118, 110 N. E. 179.) "The question of probable cause is a mixed question of law and fact, and when such a defense is alleged, and evidence has been offered in relation thereto, its credibility is to be considered and determined by the jury, under proper instructions as to what facts, if they exist, constitute or fail to constitute probable cause; and when, as in this case, the defendant's belief of the facts relied on by the plaintiff to prove a want of probable cause is essential, it is always a question of fact, to be submitted to the jury for determination." (*Acker* v. *Gundy* (Pa. Sup.), 12 Atl. 595; *Stewart* v. *Sonneborn,* 98 U. S. 187, 25 L. Ed. 116 [see, also, Rose's U. S. Notes]; *Walker* v. *Camp,* 69 Iowa, 741, 27 N. W. 800; *Murray* v. *Long,* 1 Wend. (N. Y.) 140; *Jackson* v. *Bell,* 5 S. D. 257, 58 N. W. 671, 673.)

*Messrs. Goddard & Clark, Mr. D. P. B. Marshall* and *Mr. W. S. Metz,* for Respondents, submitted a brief; *Mr. Metz* argued the cause orally.

The district court had no discretion, but was compelled under the evidence and the law to instruct the jury to return a verdict in favor of the defendants Brown and Taintor. There was no evidence whatever to prove any malice on the part of the defendants Taintor or Brown and no evidence whatever of a want of probable cause to believe the plaintiff guilty of the charges set forth in the complaint. Upon these facts they employed counsel to aid the prosecuting attorney in the prosecution. The burden of proving malice and want of probable cause

rests on the plaintiff, and he has wholly failed to prove either. (*Brown* v. *Selfridge,* 224 U. S. 189, 56 L. Ed. 727, 32 Sup. Ct. Rep. 444 [see, also, Rose's U. S. Notes] ; *Bowers* v. *Walker,* 192 Mo. App. 230, 182 S. W. 116; *Sims* v. *Jay,* 53 Okl. 183, 155 Pac. 615; *Boyer* v. *Bugher,* 19 Wyo. 463, 120 Pac. 171; *Weaver* v. *Montana Cent. Ry. Co.,* 20 Mont. 163, 50 Pac. 414.) In a clear case, such as this case, the question of want of probable cause is one of law for the court. (*Brown* v. *Selfridge,* 224 U. S. 189, 56 L. Ed. 727, 32 Sup. Ct. Rep. 444 [see, also, Rose's U. S. Notes].)

The undisputed evidence shows that the criminal case was instituted by the county attorney and by Mr. Le Fors, the stock detective, and the plaintiff Caddel wholly failed to prove any case whatever under the allegations of his complaint. Even if Mr. Brown and Taintor, the respondents, had instituted the criminal prosecution upon the advice of the prosecuting attorney, this would be a complete defense and would constitute probable cause. (*Ambs* v. *Atchison, T. & S. F. R. Co.,* 114 Fed. 317; *Stewart* v. *Sonneborn,* 98 U. S. 187, 25 L. Ed. 116 [see, also, Rose's U. S. Notes] ; *Hicks* v. *Brantley,* 102 Ga. 264, 29 S. E. 459; *Fowles* v. *Hayden,* 129 Mich. 586, 89 N. W. 339; *Shea* v. *Morand,* 191 Ill. App. 11; *Hightower* v. *Union Savings etc. Co.,* 88 Wash. 179, Ann. Cas. 1918A, 489, 152 Pac. 1015.) In this case the evidence that was submitted to the county attorney and to the other attorneys, Mr. Marshall and Judge Metz, was a full and fair statement of all the facts and was considered by them sufficient to warrant a prosecution of the plaintiff, Caddel. And the advice of an attorney made in good faith is always a good defense. (*Dunlap* v. *New Zealand etc. Ins. Co.,* 109 Cal. 365, 42 Pac. 29; *Hess* v. *Oregon G. Baking Co.,* 31 Or. 503, 49 Pac. 803; *Brady* v. *Georgia Home Ins. Co.,* 24 Tex. Civ. 464, 59 S. W. 914; *Rogers* v. *Mullins,* 26 Tex. Civ. 250, 63 S. W. 897; *Brinsley* v. *Schulz,* 124 Wis. 426, 102 N. W. 918; *Shea* v. *Morand,* 191 Ill. App. 11; *Carrigan* v. *Graham,* 166 Ky. 333, 179 S. W. 198.) The advice of a prosecuting attorney constitutes probable cause. (*Ambs* v. *Atchison, T. & S. F. R. Co.,* 114 Fed. 317; *Stewart* v.

*Sonneborn, supra; Fowles* v. *Hayden, supra; Hightower* v. *Union Savings & T. Co.,* 88 Wash. 179, Ann. Cas. 1918A, 489, 152 Pac. 1015; *Schippel* v. *Norton,* 38 Kan. 567, 16 Pac. 804–806.)

What constitutes probable cause is a question of law for the court. (*Michael* v. *Matson,* 81 Kan. 360, L. R. A. 1915D, 1, 105 Pac. 537; *Martin* v. *Corscadden,* 34 Mont. 308, 320, 86 Pac. 33; *Smith* v. *Munch,* 65 Minn. 256, 68 N. W. 19; *Blunk* v. *Atchison, T. & S. F. Ry. Co.,* 38 Fed. 311; *Boyer* v. *Bugher,* 19 Wyo. 463, 120 Pac. 171; *Johnson* v. *Southern Pac. Co.,* 157 Cal. 333, 107 Pac. 611; *Ross* v. *Hixon,* 46 Kan. 550, 26 Am. St. Rep. 123, 12 L. R. A. 760, 26 Pac. 955.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

From the transcript it appears that on July 10, 1915, one Joe Le Fors swore to a complaint in a justice's court of Big Horn county, charging one John H. Caddel with the larceny of a steer belonging to the wife of respondent Brown. Preliminary hearing was had and the magistrate dismissed the complaint. Thereupon Caddel brought his action charging that respondents "maliciously and without probable cause, caused, instigated and procured the said Le Fors to make and file" the complaint. At the close of appellant's testimony, respondents moved for judgment of nonsuit, which motion was overruled; having introduced testimony, respondents moved for a directed verdict, which motion was sustained; directed verdict returned and judgment thereon entered. Appellant then moved for a new trial, which motion was denied. He appeals from the judgment and from the order denying his motion for a new trial.

[1] It appears from the evidence that Le Fors was a stock detective, whose salary was paid partly by the state of Wyoming and partly by an association of stockmen in that state; while one Moses held a like position in Montana, receiving some part of the salary from an association of which Brown and Taintor were members. By a private agreement, these two men covered

Southern Montana and Northern Wyoming, jointly. In June of 1915, one Thad Shipman made an alleged confession to Moses of a partnership between himself and Caddel to steal unbranded calves and colts, dividing the spoils. He made an affidavit setting out in detail, among other alleged transactions, the taking of the animal in question from a cow belonging to Mrs. Brown, and naming several men who could corroborate him as to the ownership of the cow and the identification of the animal as her calf. Moses turned the affidavit over to Le Fors, who was then staying nights at the Taintor place in Montana, to handle the matter alleged. Le Fors investigated the several charges, interviewed the parties named, and, it seems, consulted two attorneys in Sheridan, Wyoming—W. S. Metz and D. P. B. Marshall. Metz was representing the man Shipman, while Marshall's connection with the matter is not entirely clear. On cross-examination as a witness for the defense, in answer to a question concerning his activity in getting the witnesses together for consultation with County Attorney Bunston, of Big Horn county, Marshall answered: ''I felt that I was working in the interest of my client, Mr. Brown, who had been a client in other matters, and also doing what the county attorney had requested.'' He met Bunston in Billings and laid the matter before him, giving him a copy of the Shipman affidavit. As to whether Marshall went to Billings for that purpose or on other business, as to his purpose in laying the matter before the county attorney at all, and as to who, if anyone, paid his expenses on that trip, the record is silent.

Bunston did not take Marshall's version of the facts, but stated that he desired to talk with the parties named personally and requested Marshall to get them together at Sheridan. This Marshall did, and Bunston made an independent investigation; talked with all of the parties named, secured affidavits, and determined in his own mind that the evidence was sufficient on which to proceed as county attorney, and so advised Metz and Marshall. In consulting with Brown, his only inquiry was as to the ownership of the brand alleged to have been on the

mother of the animal in question, and it does not appear that either Brown or Taintor were advised or knew, prior to the filing of the complaint, that a criminal proceeding was to be instituted.

The theory of the appellant is that Le Fors, Metz and Marshall were acting as agents of respondents. The only evidence introduced to support this theory is that, prior to the commencement of the action, Taintor directed certain men to get Brown and one Jack Burke, who, it was said, could identify the animal, and go to Caddel's place and get the steer; that Caddel sent a man to demand its return and, before refusal, Brown consulted Le Fors and Moses; that, after the commencement of the action, respondents employed Metz and Marshall to assist in the prosecution. Two witnesses, employees of Caddel, testified that, on the day of the preliminary examination, Brown, in a barroom, stated that Taintor had told him to go ahead with the prosecution, and that he (Taintor) would stand all the expenses. It is not contended that the evidence discloses an agreement to this effect before the filing of the criminal complaint, and Brown testified that all he said was that he and Taintor were to pay the private attorneys, half and half.

Marshall, though not employed by Brown, "felt" that he was working in the interest of his client; but his only connection with the case was to call certain matters to the attention of the proper public official. Metz was employed by Shipman and his activities were on behalf of his client. Le Fors was acting in the interest of the stock associations generally and signed the complaint at the suggestion of the county attorney.

County Attorney Bunston testified that he acted on his own initiative, without consulting or advising with Brown or Taintor, and only after a careful and independent investigation, and determination that he had a case calling for action in his official capacity; and he proceeded in the matter without as much as advising respondents that he proposed to do so.

The fact that respondents employed private counsel in the case might import malice, had they been instrumental in procuring the complaint to be filed. Under all the facts disclosed

in the record, they were not even consulted, and what then took place, after the filing of the complaint, is not material to the issues in this case.

The trial court had the opportunity to consider the evidence on the motion for judgment of nonsuit. On motion for directed verdict and again on motion for a new trial, and, in the light of the facts disclosed in the record, we find no error in its rulings on these motions.

Other errors are assigned; but, as appellant failed to connect the respondents with the institution of the proceeding complained of, it is not necessary that they be considered.

The judgment and order denying a new trial are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY and HURLY concur.

MR. JUSTICE COOPER, being absent, takes no part in the foregoing decision.

